IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| Dr. Chipley Bennett, | ) )  ) Case No.: ) |
| Plaintiff, | ) |
| v. | ) ) COMPLAINT |
| Spartanburg Community College, | ) ) *JURY TRIAL DEMANDED* |
| Defendant. | ) ) |

Plaintiff, through his attorney, would respectfully show unto this Court as follows:

1. Plaintiff Dr. Chipley Bennett (hereinafter "Dr. Bennett") is a resident of Spartanburg County, South Carolina.

2. Defendant Spartanburg Community College (hereinafter "Defendant" or "the College") is a South Carolina public institution of higher education with campuses in Spartanburg, Gaffney, Duncan and Union, South Carolina.

3. Dr. Bennett was employed by Defendant in Spartanburg and Cherokee Counties, South Carolina.

4. This Court has federal question jurisdiction over this case, pursuant to 28 U.S.C. § 1331, because the causes of action herein concern alleged violations of the Family and Medical Leave Act ("FMLA") 29 U.S.C. §§ 2601, *et seq.*

5. Venue is proper in this District and Division because substantially all the acts and omissions alleged herein occurred in Spartanburg and Cherokee Counties, South Carolina.

6. At all relevant times, Defendant has been an employer as defined in the FMLA.

7. Dr. Bennett was employed by Defendant as a tenured professor of Biology from

1

approximately August 1999 through May 2023. At the time of his termination from employment, he was the Academic Director of the Sciences at the Cherokee County Campus in Gaffney, South Carolina.

8. Dr. Bennett is a decorated educator who received numerous honors for the quality of his teaching while employed by Defendant. He served for nearly a decade as department chair and has served without additional compensation in a variety of leadership and committee positions at the College.

9. Although Dr. Bennett was eligible to use FMLA leave throughout his tenure with the College, he rarely used FMLA or sick leave, and had accrued a substantial balance of sick leave as of February 2023.

10. Dr. Bennett has an elderly father living in Florida. With the help of other family members, Dr. Bennett provides care to his father, including assistance with travel to medical appointments, scheduling of necessary procedures, and communications regarding medical care.

11. In or about February 2023, Dr. Bennett's father developed severe symptoms when a condition affecting his internal organs interfered with the proper functioning of his lungs. Dr. Bennett's father's breathing capacity was so compromised that he was placed in a rehabilitation facility and given supplemental oxygen.

12. Dr. Bennett made arrangements to travel to Florida on Friday, February 24, 2023, to assist his father. Dr. Bennett did not have any classes scheduled for that day but nevertheless gave advance notice to his supervisor at the College.

13. As Dr. Bennett's father's condition worsened in the days before the planned trip, he was presented with a paradox – he needed immediate surgery to relieve the impairment of his breathing function but the condition had so damaged his health that it was uncertain

whether he could survive such a surgery.

14. Early in the week beginning Monday, February 20, 2023, Dr. Bennett's father's doctors concluded that it was so critical that he have the surgery on Thursday, February 23rd, that their ordinary practice of performing surgeries on Fridays would have to be altered.

15. Dr. Bennett initially believed another family member would be able to take his father to the surgery and wait while it was being performed. However, he learned on Wednesday, February 22nd, that such arrangement had fallen through. Dr. Bennett would have to drive to Florida overnight so as to be available the morning of February 23rd to take his father to have the surgery.

16. When Dr. Bennett finished teaching his last class, late in the afternoon on February 22nd, he immediately went to the office of Mandy Painter, the Executive Director of the College's Cherokee County campus, to inform her that he would need to leave that evening for Florida. Painter had already left campus for the day.

17. Despite the extreme time pressure and emotional toll of his father's failing health, Dr. Bennett made arrangements to have his class covered on the 23rd before leaving for Florida. He contacted Haila Kaylin, a College employee who performed tutoring services in the Science Department, and arranged to have her available for his classes on the 23rd. Two of the three classes were taking exams, so Ms. Kaylin would only need to proctor the exams. For the third class, Dr. Bennett provided Ms. Kaylin with materials to help students review and prepare for an upcoming exam. She was fully capable of leading a review session with the assistance of such materials and agreed to do so.

18. Having arranged for his classes to be covered, Dr. Bennett left for Florida in the early evening, arriving some eight hours later in the early morning hours of March 23rd.

19. Dr. Bennett drove his father to the surgery and stayed on the premises while the surgery

was performed. From the waiting room, he kept in touch with College representatives and completed previously scheduled ZOOM calls.

20. Although the students in Dr. Bennett's classes were fully satisfied with Ms. Kaylin's performance in leading the exam preparation session, Ms. Kaylin informed Dr. Bennett that a College official had entered the classroom, confronted her in front of students, and created an awkward and hostile environment. Ms. Kaylin eventually resigned her College position in frustration over the College's unprofessional treatment of her.

21. Despite his obvious need to focus on his father's health and recovery, Dr. Bennett made time to discuss the matter from the waiting room with Ms. Kaylin and Department Chair Dr. Akash Garg. He also attempted to contact Ms. Painter but received no answer on her office phone or her cell phone.

22. Dr. Bennett submitted FMLA requests to cover his absences on both February 23 and 24, 2023. He received notices that both days were approved for FMLA leave.

23. Dr. Bennett's father remained in the hospital after his surgery and was discharged the following day (February 24). Dr. Bennett drove his father back to a rehabilitation facility on February 24th. He returned to campus on Monday, February 27th, and resumed his full-time teaching duties.

24. On March 7, 2023, the College requested documentation to support Dr. Bennett's absences on February 23 and 24, giving him a deadline of fifteen days. Two days later, Dr. Bennett submitted all relevant paperwork, including FMLA forms and confirmation from his father's doctor. The College has never indicated that the submitted materials were deficient or inadequate in any way.

25. Dr. Bennett was eligible for FMLA leave on February 23 and 24. He submitted all materials necessary to establish his entitlement to such leave. The College had, and has,

no legitimate legal basis to deny FMLA leave for the days in question.

26. On May 12, 2023, the College summoned Dr. Bennett to a Zoom call with various College leaders and an HR representative. On that call, the College informed him that he was fired, effective immediately, but refused to disclose a reason.

27. The College followed up the discussion in the meeting with a letter, asserting that Dr. Bennett took "unauthorized leave," that his assignment of Ms. Kaylin to cover his classes violated the standards of the College's accrediting body, the Southern Association of Colleges and Schools Commission on Colleges (SACSCOC), and that he was terminated for "conduct unbecoming a state employee." At all pertinent times, the College knew that each of these explanations was false.

28. After more than two decades of exemplary service to the College, Dr. Bennett was dismissed without notice, escorted by College security into his office to collect his things, and walked out to his car.

### Count I
### For A First Cause of Action
### Family and Medical Leave Act
### Interference

29. Dr. Bennett incorporates by reference the foregoing allegations as if set forth here in full.

30. Defendant's actions constitute unlawful interference, restraint and/or denial of Dr. Bennett's rights under the Family and Medical Leave Act.

31. Dr. Bennett has been damaged as a result of Defendant's unlawful interference.

32. Defendant's interference with Dr. Bennett's FMLA rights was willful.

WHEREFORE, Dr. Bennett respectfully requests a trial by jury on his claim for interference with rights in violation of the FMLA and that he be granted all available relief including, but not limited to reinstatement, an award of lost wages (back pay and front pay) and

employment benefits, liquidated damages, attorneys' fees and litigation costs, pre- and post-judgment interest, equitable relief as the Court may deem appropriate, and all other and further relief as to the Court appears necessary and proper.

### Count II
### For A Second Cause of Action
### Family and Medical Leave Act
### Retaliation/Discharge/Discrimination

33. Dr. Bennett incorporates by reference the foregoing allegations as if set forth here in full.

34. Dr. Bennett engaged in protected activity by exercising his rights to take FMLA leave in connection with a family member's serious health condition and obtain reinstatement following his period of leave.

35. Defendant retaliated against Dr. Bennett for engaging in such protected activity by terminating his employment.

36. Defendant's actions constitute unlawful retaliation, discharge and/or discrimination under the FMLA.

37. Dr. Bennett has incurred damages as a result of Defendant's unlawful retaliation.

38. Defendant's retaliation against Dr. Bennett for the exercise of his FMLA rights was willful.

WHEREFORE, Dr. Bennett respectfully requests a trial by jury on his claim for retaliation in violation of the FMLA and that he be granted all available relief including, but not limited to reinstatement, an award of lost wages (back pay and front pay) and employment benefits, liquidated damages, attorneys' fees and litigation costs, pre- and post-judgment interest, equitable relief as the Court may deem appropriate, and all other and further relief as to the Court appears necessary and proper.

Respectfully submitted this 9th day of June, 2023.

                                                                 s/ Jeffrey P. Dunlaevy
Jeffrey P. Dunlaevy (Federal Bar No. 7575)
Dunlaevy Law Firm
37 Villa Road, Suite 440
Greenville, SC 29615
864.208.9305
jeff@dunlaevylaw.com