IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

SPARTANBURG DIVISION

| | |
|---|---|
| Dr. Chipley Bennett, ) | Civil Action No. 7:23-cv-2574-JDA-KFM |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Spartanburg Community College, ) | |
| Defendant. ) | |

This matter is before the court on the defendant's motion for summary judgment (doc. 43). Under the provisions of 28 U.S.C. § 636(b)(1)(A) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.), this magistrate judge is authorized to review all pretrial matters in employment discrimination cases and submit findings and recommendations to the district court.

## I. BACKGROUND

The plaintiff filed his initial complaint against the defendant Spartanburg Community College ("SCC") on June 9, 2023, and an amended complaint on July 12, 2023 (doc. 11). He alleges causes of action for interference and retaliation under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601–2654 (*id.* at ¶¶ 30-40). On July 25, 2023, SCC filed a motion to dismiss *in part*, arguing that the plaintiff's amended complaint failed to state a claim for FMLA interference (doc. 12). On October 24, 2023, the undersigned recommended that the motion be denied (doc. 18), and, on December 11, 2023, the Honorable Joseph Dawson, III, United States District Judge, adopted that recommendation and denied SCC's motion to dismiss *in part* (doc. 22).

On November 4, 2024, SCC filed a motion for summary judgment as to both of the plaintiff's causes of action (doc. 43). The plaintiff filed a response on November 18,

2024 (doc. 45), and SCC filed a reply on November 25, 2024 (doc. 46). Accordingly, this motion is now ripe for review.

## II. FACTS PRESENTED

The plaintiff was a full-time biology professor at SCC from 1999 until his firing in May 2023. His termination from employment followed an investigation by SCC into the plaintiff's absence from SCC's Cherokee campus to care for his ailing father, and SCC's resulting determination that the plaintiff violated its FMLA policy, its absence notification policy, and potentially violated its accreditation rules by arranging for a student to teach his classes in his absence. The plaintiff denies that he violated these policies and claims his firing was in violation of the FMLA.

SCC authorizes employees to take leave, and its leave policies – including sick leave and FMLA leave – are posted online for employees to access (doc. 43-32, Chastain aff. at ¶ 2). SCC's sick leave policy allows an employee to take accrued paid sick leave to care for a parent, but:

> Leave taken under this section may qualify as Family Medical Leave Act (FMLA) leave and, if so, will run concurrently.

(Doc. 43-46 at 6–8). SCC's FMLA leave policy likewise authorizes an employee to take unpaid FMLA leave to care for a parent with a serious health condition (*id.* at 24). When requesting leave, an employee is to enter the requests for approval on SCC's eLeave computer program (doc. 43-32, Chastain aff. at ¶ 3). For scheduling FMLA leave:

> An eligible employee requesting FMLA leave must give thirty (30) days advance notice to local management of the need to take FMLA leave when the need for leave is foreseeable (e.g. expected birth, placement for adoption or foster care, or planned medical treatment for a serious health condition of the employee or a family member). When the need for leave is not foreseeable, such notice must be given as soon as practicable.

(Doc. 43-46 at 26). Regarding notification and designation of FMLA leave:

> An employee request is not necessary for the employer to determine that leave time qualifies as FMLA leave. Such a

2

> determination may be made based on information provided to the employer and verified by the health care provider.
>
> The [SCC] will notify the employee of his or her eligibility to take leave and will inform the employee of his or her rights and responsibilities under FMLA. It is the responsibility of the local Human Resources office to ensure the declaration of leave as FMLA leave based on information provided by the employee or the employee's spokesperson if the employee is incapacitated. If the local Human Resources office lacks sufficient information about the reason for an employee's use of paid leave, the Human Resources manager should inquire further of the employee or the spokesperson to determine whether the paid leave is potentially FMLA qualifying.
>
> When leave is designated as FMLA leave the employee must be notified. No leave may be designated as FMLA leave after the leave has ended; however, if the employee was absent for an FMLA reason and the employer did not learn the reason for the absence until the employee's return (e.g. where the employee was absent for only a brief period), the employer may, upon the employee s return to work, promptly (within two (2) business days of the employee's return) designate the leave retroactively with appropriate notice to the employee.

(*Id.* at 27–28).

> In any event, under SCC's general absences policy:
>
> An employee who foresees being absent or reporting to work late should request approval through [SCC's] eLeave system. If the absence or late report is unforeseeable, the employee should notify his/her supervisor (or designee if applicable) prior to the start of the shift or within a reasonable time thereafter.
>
> An employee who does not notify his/her supervisor of an absence in a timely manner may be subject to unauthorized leave, which may result in Leave Without Pay (LWOP) and possible disciplinary action.

(Doc. 43-33 at 2). Unauthorized leave is included in SCC's list of enumerated offenses for which employees can be subject to various penalties, including termination of employment (doc. 43-39 at 6, 8).

In addition to these written policies, the plaintiff's supervisor Dr. Akash Garg gave a presentation to the faculty on January 3, 2023, in which he instructed the faculty to notify him and SCC's Laurie Warner of any leave and to "[f]ollow appropriate leave procedures into [eLeave] as appropriate" (doc. 43-3 at 17). For Cherokee campus

3

employees like the plaintiff, notice could also be given to the campus's Executive Director Mandy Painter or her assistant (*see* doc. 45-3 at 12, Garg dep. at 25:9–16).

In February 2023, SCC expected the plaintiff to be on campus 37.5 hours per week: Mondays–Thursdays from 8:00 a.m. to 5:00 p.m., and on Fridays from 8:00 a.m. to 1:30 p.m. (doc. 43-25 at 5, Williams dep. at 21:2–5). That semester, the plaintiff taught three biology classes at SCC, with each class meeting daily Monday through Thursday (doc. 45-2, Bennett decl. at ¶¶ 13, 15).

On or before Friday, February 17, 2023, the plaintiff learned that his father, who lived in Florida, needed surgery the following week, and the plaintiff made plans to visit him (doc. 45-1 at 46, Bennett Dep. at 125:15–25). On the 17th, the plaintiff contacted Haila Kaylin, a student working part-time at SCC as a tutor, to proctor two of his Thursday classes while he was away[1] (*id.* at 46, 48, 125:13–20, 128:3–10). On Tuesday, February 21st, the plaintiff learned that a family member could no longer take his father to his surgery in Florida on the morning of Thursday, February 23rd. Accordingly, the plaintiff sent a text to Ms. Kaylin requesting that she proctor his third Thursday class, to which she agreed (doc. 45-1 at 39, Bennett dep. at 106:7–16; doc. 43-7 at 4–5). The plaintiff did not use the eLeave system to request sick leave or FMLA leave in advance, and he did not notify Dr. Garg or Ms. Warner of his Thursday planned absence.[2] However, the plaintiff notified his students during his three classes on Wednesday that he would be absent on Thursday (doc. 43-2 at 3, Bennett Dep. at 17:1–5). At the end of the day on Wednesday, he attempted to provide notice to Ms. Painter or her assistant, but they had already left for the day (*id.* at

---

[1] As an undergraduate student, Ms. Kaylin's part-time job responsibilities for SCC did not include proctoring (doc. 43-28 at 7, Painter dep. at 24:7–9).

[2] The plaintiff notified Dr. Garg that he would miss an SCC event on Friday the 24th to be with his father (doc. 43-8 at 2), but Dr. Garg denied receiving this notification (doc. 45-3 at 8, 23, Garg dep. at 19:8–18, 36:4–11).

4

30–31, 75:5– 76:11). The plaintiff then left for Florida that same evening (doc. 45-2, Bennett decl. at ¶ 17).

The next day, Ms. Kaylin proctored the first class for the plaintiff as requested (doc. 45-5 at 14, Kaylin Dep. at 81:10–12). Dr. Garg then learned that the plaintiff was absent and that someone else had been leading his class and went to the classroom in time to see Ms. Kaylin proctoring the second class (doc. 43-21 at 5, 6, 8, Garg dep. at 26:19–27:5, 29:1–5). Dr. Garg entered the class and filmed it, and after class was over, he introduced himself to Ms. Kaylin and asked about the plaintiff's absence (*id.* at 9, Garg dep. at 30:7–14; doc. 45-5 at 16, 17, 19, Kaylin dep. at 83:4–7, 84:2–8, 86:7–18). Soon after, Ms. Kaylin called the plaintiff to advise him of the encounter, and the plaintiff then called Dr. Garg (doc. 45-5 at 19, 22, 23, Kaylin dep. at 86:19–25, 89:4–7, 90:7–21; doc. 45-1 at 25, Bennett dep. at 66:15–17). The plaintiff explained that he was at the hospital with his father, and Dr. Garg instructed him to contact SCC's Human Resources Department (doc. 45-1 at 27, Bennett dep. at 68:2–6; doc. 45-3 at 22, Garg dep. at 35:7–17).

The next day, the plaintiff texted Dr. Garg that he had not given prior notice due to his father's emergency surgery, and he asked Dr. Garg to let other administrators know (doc. 43-10 at 2). In the meantime, Dr. Garg notified SCC Provost Dr. Lisa Satterfield and Dean Dr. Jenny Williams via email of his concerns about the plaintiff's absence and Ms. Kaylin proctoring his classes (doc. 43-22 at 3). He further noted the plaintiff's previous non-compliance with "established [leave] policies" in 2021 (*id.*).

The plaintiff thereafter used the eLeave system to enter his FMLA leave request for Thursday the 23rd and Friday the 24th (doc. 43-10 at 2). SCC FMLA Coordinator Katie Papakostas approved his request, and he received paid leave for both days (doc. 43-43 at ¶¶ 3–7; doc. 45-1 at 53–54, Bennett dep. at 141:21–142:4). However, despite approving this leave request, on March 14th, Ms. Papakostas initiated an investigation into the incident with the South Carolina Technical College System ("SCTCS") (doc. 43-31). The

5

assigned SCTCS investigator Patrice Witt ultimately determined that the plaintiff: (1) failed to notify his supervisor of his need for FMLA leave, despite having prior knowledge; (2) failed to comply with SCC's Absence Policy as set forth in Dr. Garg's January 2023 faculty presentation; and (3) "potentially" violated SCC's accreditation rules by allowing Ms. Kaylin to proctor his classes (doc. 43-27 at 4). With Dr. Witt's investigation report, SCC's administrators (Dr. Garg, Dr. Williams, Dr. Satterfield, and SCC President Dr. Michael Mikota) determined the plaintiff should be fired for failure to provide notice of leave (doc. 43-25 at 7, Williams dep. at 37:6–19; doc. 43-26 at 4–6, Mikota dep. at 14:16–15:5, 15:11–16:3; doc. 43-41, Satterfield aff. at ¶ 3). On May 12, 2024, the plaintiff was told during a Teams meeting with SCC administrators that he was fired (doc. 43-2 at 42–43, Bennett dep. at 95:13–96:24). He received a formal notice signed by Dr. Garg that his termination was for conduct unbecoming of a state employee and, more specifically, taking unauthorized leave without prior approval and using an improperly credentialed tutor to cover his classes (doc. 43-12 at 2).

The plaintiff filed a grievance (doc. 43-13 at 2), and Dr. Satterfield scheduled a grievance hearing for May 23, 2023 (doc. 43-14 at 2). After the hearing, Dr. Garg upheld the decision, referred to it as "my decision," and notified the plaintiff of his right to file a step-two grievance with Dr. Mikota within five days, which the plaintiff chose not to do (doc. 43-15 at 2; doc. 45-1 at 42, Bennett dep. at 111:13–21).

### III. APPLICABLE LAW AND ANALYSIS

*A.     Summary Judgment Standard*

Federal Rule of Civil Procedure 56 states as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of

6

the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

### B.     FMLA Interference

The FMLA provides covered employees with certain rights and protections, including "12 workweeks of leave during any 12-month period" for family-related reasons or for an employee's serious health condition that renders him unable to do his job. 29 U.S.C. § 2612(a)(1). Section 2615 prohibits two kinds of conduct: (1) an employer cannot "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter," *id.* § 2615(a)(1), and (2) an employer cannot "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful

by this subchapter," *id.* § 2615(a)(2). "The first prohibition gives rise to interference or entitlement claims. The second prohibits retaliation or discrimination for opposing unlawful practices." *Fry v. Rand Constr. Corp.*, 964 F.3d 239, 244 (4th Cir. 2020) (internal quotation marks and citations omitted).

The Court of Appeals for the Fourth Circuit has stated that "to make out an FMLA interference claim, an employee must demonstrate (1) that he is entitled to an FMLA benefit; (2) that his employer interfered with the provision of that benefit; and (3) that the interference caused him harm." *Adkins v. CSX Transp., Inc.*, 70 F.4th 785, 796 (4th Cir. 2023) (citing *Adams v. Anne Arundel Cnty. Pub. Sch.*, 789 F.3d 422, 427 (4th Cir. 2015)). "The FMLA 'provides no relief *unless the employee has been prejudiced* by the violation.'" *Id.* (emphasis in original) (quoting *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002)).

The defendant argues that the plaintiff has failed to produce evidence that it interfered with his FMLA leave because the plaintiff received his leave with full pay (doc. 43-1 at 15–16). Specifically, the defendant argues that "[b]oth the United States Court of Appeals for the Fourth Circuit and this Court have recognized that for interference to cause harm or prejudice, this harm or prejudice must occur before the employee takes FMLA leave" (*id.* at 15). The defendant further argues that "[b]eing terminated after taking FMLA leave does not give rise to an FMLA interference claim," and "an employee whose FMLA leave was approved has not been prejudiced" (*id.*) (citing *Boone v. Bd. of Governors of the Univ. of N.C.*, 858 F. App'x 622, 624 (4th Cir. 2021) (finding that since the plaintiff received all the FMLA to which she was legally entitled, she could not establish that the defendant interfered with her FMLA rights); *Adkins,* 70 F.4th at 796 (finding no interference when the evidence showed the plaintiffs received their requested leave and were able to use that leave – during which their benefits continued and their jobs were protected – while the disciplinary process played out); *Bradford v. Molina Healthcare of S.C., LLC*, No.

8

2:18-cv-649-RMG, 2020 WL 373194, at *4 (D.S.C. Jan. 23, 2020) ("In this case, the record demonstrates Plaintiff received all of the FMLA leave to which she is legally entitled and that no one interfered with her use of that leave."); *Dodgens v. Kent Mfg. Co.*, 955 F. Supp. 560 (D.S.C. 1997) (dismissing FMLA interference claim when the plaintiff received all of the FMLA leave benefits that he was guaranteed despite being fired after FMLA leave)).

The plaintiff responds that SCC "interfered" with his leave by firing him for taking alleged "unauthorized" FMLA leave (doc. 45 at 10). In support, the plaintiff cites the following cases: *Hansler v. Lehigh Valley Hosp. Network*, 798 F.3d 149, 159 (3rd Cir. 2015) (finding that the plaintiff properly pled an FMLA interference claim where the employer fired her for excessive absences after failing to notify her of FMLA paperwork deficiencies); *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 282–83 (6th Cir. 2012) (dismissing the plaintiff's FMLA interference claim because the employer "did not shortchange his leave time, deny reinstatement, or otherwise interfere with his substantive FMLA rights"); *Conner v. Nucor Corp.*, C.A. No. 2:14-cv-4145-SB-MGB, 2015 WL 5785510, at *15 (D.S.C. Aug. 13, 2015) (denying a motion to dismiss FMLA interference claim because the plaintiff pled that he felt taking FMLA leave was a risk to his employment and he received negative treatment regarding his doctor appointments); *Edusei v. Adventist HealthCare, Inc.*, C.A. No. DKC 13-0157, 2014 WL 3345051, at *6 (D. Md. July 7, 2014) (determining that the plaintiff's FMLA interference claim alleging the defendant wrongfully failed to authorize FMLA leave, which resulted in her one-day suspension and termination, survived summary judgment); and *Applegate v. Kiawah Dev. Partners, Inc.*, C.A. No. 2:12-738-RMG-BM, 2013 WL 3206928, at *10, 13 n.9, 14 (D.S.C. May 20, 2013) (finding that plaintiff's interference claim survived summary judgment where the defendant refused to pay her incentive fee and terminated her employment for writing and cashing a fee check while on FMLA leave).

Unlike the employees in *Hansler*, *Conner*, *Applegate*, and *Edusei*, the plaintiff here has not presented any evidence that he suffered any leave denial, suspension, missed

9

paychecks, or ridicule for taking FMLA leave. To the contrary, the evidence shows that SCC approved the plaintiff's FMLA leave retroactively, and the plaintiff received all salary for the two days he requested FMLA leave (doc. 43-43 at ¶¶ 3–7; doc. 45-1 at 53–54, Bennett dep. at 141:21–142:4). There is no evidence that any SCC employees discouraged the plaintiff from taking his FMLA leave. While the plaintiff argues that these dates were later classified as "unauthorized leave," there is no evidence that SCC denied the plaintiff any of the benefits he received (e.g., reduced leave time or a decrease in salary). The sole detriment that the plaintiff alleges he suffered related to this leave was his termination from employment almost three months later and, without more, this would be more appropriately analyzed under the retaliation prong of the FMLA. *See Seeger*, 681 F.3d at 282. Accordingly, the undersigned recommends that the district court grant the defendant summary judgment on the plaintiff's FMLA interference cause of action.[3]

### C.    FMLA Retaliation

Because FMLA retaliation claims are analogous to Title VII retaliation claims, they are analyzed under the *McDonnell Douglas*[4] burden-shifting framework. *Nichols v. Ashland Hosp. Corp.*, 251 F.3d 496, 502 (4th Cir. 2001). The plaintiff bears the burden of making a prima facie case showing "that he engaged in protected activity, that the employer took adverse action against him, and that the adverse action was causally connected to [his] protected activity." *Cline v. Wal–Mart Stores, Inc.*, 144 F.3d 294, 301 (4th Cir. 1998). If he makes this prima facie showing, then the defendant bears the burden of offering a nondiscriminatory explanation for its decision to terminate the plaintiff's employment, and

---

[3] The undersigned notes that while this recommendation may appear to contradict the undersigned's report and recommendation ("R&R") filed on October 24, 2023, on this issue (doc. 18), that R&R was analyzed under the more liberal Rule 12(b)(6) pleading standard to permit the plaintiff an opportunity to more fully develop his case during discovery, rather than the Rule 56 evidence standard applicable here.

[4] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800–06 (1973).

thereafter the burden would return to the plaintiff to show that the defendant's "proffered explanation is pretext for FMLA retaliation." *Nichols*, 251 F.3d at 502.

In analyzing an FMLA retaliation claim, the court must determine whether the defendant's reason for firing the plaintiff was pretext for retaliation. *Millen v. AMIkids Beaufort, Inc.*, No. 9:21-cv-03879-RMG-MGB, 2023 WL 4409036, at *6 (D.S.C. Apr. 25, 2023), *R&R adopted by* 2023 WL 3944901 (D.S.C. June 12, 2023). To make this determination, the court must look to the defendant's reasonable beliefs about the plaintiff's conduct. *See Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007).

"An employee is mandated to provide notice to her employer when she requires FMLA leave." *Rhoads v. FDIC*, 257 F.3d 373, 382 (4th Cir. 2001). The FMLA requires that employees provide thirty days notice, or such notice as is "practicable" where "the date of treatment requires leave to begin in less than 30 days." 29 U.S.C. § 2612(e)(2)(B). "As soon as practicable means as soon as both possible and practical, taking into account all of the facts and circumstances in the individual case." 29 C.F.R. § 825.302.

> "In sum, '[w]hat is practicable [notice under the FMLA], both in terms of the timing of the notice and its content, will depend upon the facts and circumstances of each individual case. The critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition."

*Mathews v. Choptank Cmty. Health Sys., Inc.*, No. 1:20-cv-01255-ELH, 2020 WL 7707041, at *19 (D. Md. Dec. 28, 2020) (alterations in original) (quoting *Moore v. United Int'l Investigative Servs., Inc.*, 209 F. Supp. 2d 611, 614 (E.D. Va. 2002)); *see also Burgess v. JHM Hotels, LLC*, No. 6:08-cv-3919-HMH-BHH, 2010 WL 1493129, at *6 (D.S.C. Mar. 18, 2010), *R&R finding adopted by* 2010 WL 1493132 (D.S.C. Apr. 13, 2010) (finding that a plaintiff met the "as soon as practicable standard" when she attempted, without success, to reach her supervisor the day she learned of the need for leave but did speak with him the

11

following day). The employee must also "comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances." 29 C.F.R. § 825.303(c).

"Once the employee has provided at least verbal notice of a serious health condition sufficient to alert the employer to the fact that the protections of the FMLA may apply, '[t]he employer should inquire further to ascertain whether it is FMLA leave that is being sought and to obtain further details of this leave.'" *Brushwood v. Wachovia Bank, N.A.*, 520 F. App'x 154, 157 (4th Cir. 2013) (alteration in original) (quoting *Rhoads*, 257 F.3d at 381–82). Thus, when "evaluating the adequacy of an employee's notice, '[t]he critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition.'" *Osborne v. Suminoe Textile of Am. Corp.*, No. 7:13-cv-11-TMC-KFM, 2014 WL 3809652, at *4 (D.S.C. July 30, 2014) (quoting *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758 (5th Cir. 1995)).

The defendant does not challenge the plaintiff's ability to make a prima facie case of retaliation (*see* doc. 43-1 at 18–24; doc. 46 at 2–5). Nonetheless, the undersigned finds that the plaintiff has submitted sufficient evidence to establish a prima facie case that he was entitled to FMLA leave to take his father to his surgery, SCC approved his FMLA leave, and his termination from employment three months later was causally connected to his approved FMLA leave.

The defendant argues that it had a legitimate reason for terminating the plaintiff's employment – its belief that the plaintiff violated its leave policy and that the plaintiff's use of a tutor to lead his class breached accreditation rules (doc. 43-1 at 19). The defendant also argues that, other than Dr. Garg, there is no evidence that the decisionmakers, including final decisionmaker Dr. Mikota, were aware of the plaintiff's FMLA leave (*id.* at 24–27). In response, the plaintiff argues that these reasons are merely

12

pretextual (doc. 45 at 14–17). The plaintiff also argues that it is "highly implausible" that the decisionmakers were completely unaware of his FMLA leave, and, even if they were, they merely rubber-stamped Dr. Garg's recommendation (*id.* at 17).

The undersigned finds that the defendant has offered a legitimate, nondiscriminatory explanation for its decision to terminate the plaintiff's employment – the alleged violation of the FMLA Policy's notice requirement. Under SCC's FMLA Policy, an employee intending to use FMLA leave must give thirty days advance notice to "local management" if the leave is foreseeable, but when the leave is not foreseeable, such notice must be given "as soon as practicable" (doc. 43-46 at 26). Dr. Garg also told the plaintiff to notify either Dr. Garg or Ms. Warner of any absence (doc. 43-3 at 17; doc. 43-2 at 11–12, Bennett dep. at 26:4–27:9). The evidence before the court shows that the plaintiff knew of his impending Thursday the 23rd absence, at the latest, in the morning of Wednesday the 22nd (doc. 45-1 at 20, 39, Bennett dep. at 59:1–12, 106:16–21). While the plaintiff testified that he told his students and tried to tell Ms. Painter and her administrator in person on the 22nd, there is no evidence that the plaintiff made any further attempts to notify staff (*id.* at 22, 32–33, 62:1–7, 75:5–24, 76:2–11). This evidence supports the defendant's proffered non-discriminatory reason for terminating the plaintiff's employment for failing to follow its interpretation of SCC's policies.

Finally, the plaintiff has submitted some evidence of pretext, including that there is a dispute of material fact regarding his compliance with SCC's policies. There is conflicting evidence about when the notice must be given and how it should be furnished, and the plaintiff's compliance with such. The FMLA policy states that when the leave is not foreseeable, notice must be given "as soon as practicable" (doc. 43-46 at 26). However, the written FMLA policy is not clear about how the plaintiff should have communicated notice and to whom he should have provided it (*see id.*). The general Employee Absences Policy states that for "unforseen absences," the employee should notify his or her supervisor prior

13

to the start of the shift <u>or</u> within a reasonable time thereafter (doc. 43-33 at 2). Ms. Chastain testified that when an employee has "little notice" of the need for leave, separate notice from eLeave is not required (doc. 43-30 at 11, Chastain dep. at 11:6–25).

On Tuesday, the 22nd, the plaintiff notified Dr. Garg that he would be unavailable for an event on Friday the 24th because he would be traveling to Florida to be with his ailing father (doc. 43-8 at 2). The plaintiff testified that he attempted to tell Ms. Painter and her administrator on Wednesday afternoon in person about his upcoming absence, and he told Dr. Garg on Thursday after Dr. Garg drove to the plaintiff's class (doc. 45-1 at 25, 32–33, Bennett Dep. at 66:15–17, 75:5–24, 76:2–11). The plaintiff also testified that employees commonly entered their leave on the day of leave itself (*id.* at 41, 108:12–25). While SCC administrators reminded the plaintiff to enter his leave into eLeave, they did not specify when he should enter his leave (*see* doc. 43-4 at 2). Determining whether the plaintiff's notice was "as soon as practicable" or within a "reasonable" time under these facts and circumstances is an issue for the trier of fact. *See J.D. by Doherty v. Colonial Williamsburg Found.*, 925 F.3d 663, 675 (4th Cir. 2019) (holding that "fact-intensive" inquiries are "best left to a jury, who can weigh the competing evidence and make credibility determinations").

The plaintiff also presented evidence that the other proffered reason for his firing – utilizing Ms. Kaylin to lead a class review in his absence – was pretextual. Ms. Witt could not determine whether the plaintiff's use of a tutor actually violated any rules (*see* doc. 43-27 at 4). This shows that the defendant knew before firing the plaintiff that he may not have violated accreditation standards, which contradicts its "reasonable belief" argument. Accordingly, there is an issue of material fact regarding whether the defendant's

belief was "reasonable" and whether the defendant terminated the plaintiff's employment in retaliation for his protected FMLA activity.[5]

Lastly, the defendant argues that there is no evidence that the decisionmakers were aware of the plaintiff's FMLA leave (doc. 43-1 at 24). The plaintiff responds with a "cat's paw" argument (doc. 45 at 17–18) (citing *Lowery v. CSX Transp., Inc.*, 690 F. App'x 98 (4th Cir. 2017) and *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 290 (4th Cir. 2004)). As the Fourth Circuit stated in *Hill*:

> When a formal decisionmaker acts merely as a cat's paw for or rubber-stamps a decision, report, or recommendation actually made by a subordinate, it is not inconsistent to say that the subordinate is the actual decisionmaker or the one principally responsible for the contested employment decision, so long as he otherwise falls within the parameters of the discrimination statute's definition of an employer or agent of the employer.

354 F.3d at 290, *overruled on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 169 (2009). "In this regard, the plaintiff must demonstrate that the supposed real decisionmaker did more than merely exert 'influence' over the termination decision." *Kaufman v. Del Toro*, No. 8:20-cv-00983-PX, 2024 WL 943432, at *8 (D. Md. Mar. 5, 2024) (quoting *Hill*, 354 F.3d at 291). The subordinate supervisor must have made the decision to terminate the plaintiff, and the final authority merely rubber-stamped this decision. *Id.* In *Kaufman*, the court found that the plaintiff's claim survived challenge because the ultimate decisionmaker was essentially an "empty suit" who "merely took the information that was given to him and accepted it without question." *Id.* He performed no independent review or

---

[5] The defendant also argues about the plaintiff's veracity (doc. 43-1 at 19). However, the defendant's witnesses have their own inconsistencies – from Dr. Garg mis-remembering the plaintiff's email about his Friday absence (doc. 45-3 at 8, 23, Garg dep. at 19:8–18, 36:4–8) to Dr. Williams claiming to have been unaware of the plaintiff's FMLA leave despite receiving an email about it (doc. 45-4 at 22–23, Williams dep. at 40:21–41:6). Dr. Garg testified that the Friday absence, of which the plaintiff provided advance notice, was part of the problem that he had with the plaintiff (doc. 45-3 at 8, Garg dep. at 19:8–18). These credibility issues from multiple witnesses about material facts cannot be resolved on summary judgment. *See Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 569 (4th Cir. 2015) ("The court therefore cannot weigh the evidence or make credibility determinations.").

investigation, did not propose any alternatives to termination, did not speak with the plaintiff, and did not write the plaintiff's termination letter. *Id.*

Here, Dr. Garg knew of the plaintiff's FMLA leave (*see* doc. 43-43 at ¶ 2; doc. 43-18 at 2). There is evidence that Dr. Williams also knew about the FMLA leave because Dr. Garg told her about it (doc. 45-4 at 22–23, Williams dep. at 40:21–41:6; doc. 45-3 at 54). Dr. Satterfield and Ms. Chastain were in contact with Dr. Garg during the decision process (doc. 45-3 at 31, Garg dep. at 46:2–18), and Dr. Mikota's decision was directly tied to Dr. Garg's recommendation (doc. 43-25 at 8, Williams dep. at 38:1–3). Dr. Mikota did not perform his own investigation and only considered the Witt report and a conversation with Ms. Chastain and another employee, who told Dr. Mikota that the other administrators recommended that the plaintiff be terminated from employment (doc. 43-26 at 5–7, Mikota dep. at 15:11–19, 16:12–14, 17:14–17). Dr. Garg signed the termination letter (doc. 43-12 at 2) and referred to the termination as "my decision" in his letter denying the plaintiff's grievance (doc. 43-15 at 2). Accordingly, there is sufficient evidence that Dr. Mikota merely rubber-stamped Dr. Garg's recommendation. *See Hill*, 354 F.3d at 290–92. Thus, the undersigned recommends that the district court reject the defendant's argument and deny the defendant's motion for summary judgment on the plaintiff's FMLA retaliation cause of action.

## IV. CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the defendant's motion for summary judgment (doc. 43) should be granted in part and denied in part. The undersigned recommends that the district court grant summary judgment on the plaintiff's FMLA interference cause of action and deny summary judgment on the plaintiff's FMLA retaliation cause of action.

IT IS SO RECOMMENDED.

s/Kevin F. McDonald
United States Magistrate Judge

April 17, 2025
Greenville, South Carolina

*The attention of the parties is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
250 East North Street, Suite 2300
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation**. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).