IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| Dr. Chipley Bennett, | ) | C.A. No.: 7:23-cv-02574-JDA-KFM |
| | ) | |
| Plaintiff, | ) | **DEFENDANT'S OBJECTIONS TO** |
| | ) | **REPORT AND RECOMMENDATION** |
| v. | ) | |
| | ) | |
| Spartanburg Community College | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## NATURE OF THE CASE

Plaintiff alleges claims for interference and retaliation under the Family Medical leave Act of § 1993 (FMLA), 29 U.S.C. §§2601 et seq.

## ARGUMENT

The United States Magistrate Judge correctly recommended that this Court grant SCC's motion for summary judgment as it pertains to Plaintiff's FMLA interference claim. (ECF No. 49, p. 10.) In analyzing Defendant's motion for summary judgment directed to Plaintiff's FMLA retaliation claim, the United States Magistrate Judge correctly found that SCC had proffered evidence of a legitimate, nondiscriminatory explanation for its decision to terminate Plaintiff's employment. (ECF No. 49, p. 13.) However, the United States Magistrate Judge incorrectly concluded that there is sufficient evidence to submit the question of whether such reason is pretextual to a jury. (Id. at 12-16.)

### There is No Genuine Dispute of Any Material Fact Concerning Pretext

"[T]o show pretext, a plaintiff may show that an employer's proffered nondiscriminatory reasons for the termination are inconsistent over time, false, or based on mistakes of fact."

Sempowich v. Tactile Sys. Tech., Inc., 19 F.4th 643, 652 (4th Cir. 2021). When an employer gives a legitimate, non-discriminatory reason for discharging the plaintiff, "it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." Hawkins v. PepsiCo, Inc., 203 F.3d 274, 280 (4th Cir. 2000). Accordingly, this Court must address whether SCC honestly believed that Plaintiff's conduct violated its policies. See Holland v. Washington, 487 F.3d 208, 217 (4th Cir. 2007) ("Here, the uncontested evidence established that DeCesaris (the decisionmaker) honestly believed that Holland deserved to be discharged for threatening Peck, regardless of whether Holland did in fact issue the threats."); Millen v. Amikids Beaufort, Inc., C.A. No. 9:21-cv-3879-RMG-MGB, 2023 WL 4409036, at *6 (D.S.C. Apr. 25, 2023), *Report and Recommendation adopted*, 2023 WL 3944901 (D.S.C. June 12, 2023) ("To make this determination, the Court must look to the *Defendant's* reasonable beliefs about Plaintiff's conduct."); Tedder v. Care South Carolina, Inc., C.A. 4:20-cv-707-SAL, 2022 WL 909397 (D.S.C. Mar. 29, 2022) (Granting summary judgment and stating that even if the employer conducted a poor investigation, it does not establish that the employer's proffered reason is pretextual); Sweikata v. Town of Kingstree, C.A. No. 4:20-cv-1100-SAL, 2022 WL 780774, at *2 (D.S.C. Mar. 15, 2022) (Granting summary judgment and holding that even if the employer's investigation was weak, making a poor decision does not establish pretext.)

The United States Magistrate Judge correctly noted that to determine whether SCC's reason for terminating Plaintiff's employment was pretext for retaliation, this Court "must look to the defendant's reasonable beliefs about the plaintiff's conduct." (ECF No. 49, p. 11.) (quoting Holland, 487 F.3d at 218). However, the United States Magistrate Judge incorrectly concluded that there was a genuine issue of material fact concerning SCC's reasonable beliefs about

Plaintiff's conduct. Aside from baseless speculation, there is no evidence establishing that SCC's reason for terminating Plaintiff's employment was mere pretext and that retaliation was the real reason for the termination.

**Accreditation Violations**

The Magistrate Judge found that SCC's proffered reason for Plaintiff's termination – utilizing Ms. Kaylin to teach a class in his absence – was evidence of pretext because Patrice Witt "could not determine whether [Plaintiff's] use of a tutor actually violated any rules." (ECF No. 49, p. 14.) However, contrary to this finding, Ms. Witt actually wrote that "utilizing a tutor in his absence potentially violates SACSCOC requirements consequently putting the program in jeopardy of not being in compliance by allowing an individual without a Master's degree in the discipline to instruct the course." (ECF No. 43-27, p. 4.) More importantly, there is no evidence showing that SCC did not reasonably believe that Plaintiff's use of a non-degreed tutor to teach a class and proctor his exams breached accreditation standards.

**Notice**

The United States Magistrate Judge incorrectly concluded that that there is a material issue of fact based upon a purported dispute concerning whether Plaintiff's provided notice "as soon as practicable" or within a "reasonable" time. (ECF No. 49, p. 14.) It is unclear how that relates to pretext. Nonetheless, aside from his self-serving testimony that he attempted to stop by the office of someone after work hours, there is no evidence that Plaintiff made any effort to notify anyone. To the contrary, the undisputed evidence shows that Plaintiff had telephone numbers and emails for Akash Garg and Mandy Painter, yet Plaintiff admittedly did not tell anyone he was going to be absent from school before his absence was discovered. Therefore, any questions about how or

when Plaintiff should have provided notice are not relevant because he did nothing to notify SCC prior to his absence.

### The Cat's Paw Theory Does Not Apply

The United States Supreme Court has described the cat's paw doctrine as a theory of liability in employment cases where a plaintiff may hold an "employer liable for the animus of a supervisor who was not charged with making the ultimate employment decision." Staub v. Proctor Hosp., 562 U.S. 411, 415 (2011). However, to succeed on a cat's paw theory of liability, it is not enough that the subordinate had a substantial influence on the challenged decision. Rather, there must be "sufficient evidence that the subordinate employee possessed such authority as to be viewed as the one principally responsible for the decision or the actual decisionmaker for the employer." Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 291 (4th Cir. 2004), *overruled on other grounds* Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 169 (2009).

The United States Magistrate Judge quoted Hill, for the proposition that:

> When a formal decisionmaker acts merely as a cat's paw for or rubber-stamps a decision, report, or recommendation actually made by a subordinate, it is not inconsistent to say that the subordinate is the actual decisionmaker or the one principally responsible for the contested employment decision, so long as he otherwise falls within the parameters of the discrimination statute's definition of an employer or agent of the employer.

(ECF No 49, p. 15.) The Magistrate Judge incorrectly relied upon Kaufman v. Del Toro, C.A. No. 8:20-cv-00983-PX, 2024 WL 943432 (D. Md. Mar. 5, 2024). (ECF No. 49, p. 16.) Although the Kaufman court found that the plaintiff's claim could survive the defendant's motion for summary judgment because the decisionmaker was essentially "an empty suit," Kaufman is distinguishable from this case.

In Kaufman, the plaintiff worked for the Naval Surface Warfare Center, Carderock Division (Agency) as the Branch Head for Security Policy and Programs in the Code 105 division. Id. at

*1. Notably, the plaintiff was a 100% disabled veteran, hired as part of a Wounded Warrior program. Id. The Agency allowed the plaintiff to be on a "maxi-flex" work schedule where the plaintiff could work outside "core hours," provided that he worked 80 hours every two weeks. Id. The plaintiff's first line supervisor was Nancy Cooley. His second line supervisor Melissa Berlo controlled much of the plaintiff's workday. Id.

In November 2018, the Agency launched a "commend directed investigation" into timekeeping for the Code 105 employees. Id. at *2. Berlo participated and "specifically pressed [the plaintiff] about his whereabouts, even though he was permitted to work under a 'maxi-flex' schedule and did not need to be in the office at any set time." Id. at *3. Berlo raised concerns about the plaintiff's time. Id. Berlo and the Agency's Labor and Relations Director Meg McConnell met with the plaintiff to review his timekeeping. Id. Within one week, the Agency appointed Deputy of Operations Department Feza Koprucu as the final decisionmaker regarding the plaintiff's employment status. Id. at *5. Berlo openly solicited comments from the plaintiff's coworkers which she included "with a packet of 'negative' information" provided to McConnell and Koprucu. Id. at *9.

McConnell supplied Koprucu with the command initiated investigation and a packet of "evidence" which included information "received directly from Berlo regarding [the plaintiff's] alleged shortcomings." Id. McConnell drafted the termination letter. Id. The plaintiff sued the Agency alleging claims for hostile work environment, discriminatory discharge, and retaliation. Id. at *5.

The Kaufman court analyzed the "cat's paw" theory in assessing whether the plaintiff's claim for discriminatory discharge should survive summary judgment. Id. at *8. The court noted that Koprucu did not conduct an independent investigation and he used the information that was

given to him and accepted it without question.  Id.  The court also noted that, "[m]ost damning, [Koprucu] could not testify with any real competence about the stated details of [the plaintiff's] termination, and he did not write [the plaintiff's] termination letter."  Id.  Consequently, the court determined that "a reasonable juror could conclude that Koprucu acted as a strawman for the real decisionmaker."  Id.

This case is not factually similar.  In that case, there was no independent investigation.  Instead, the investigation was conducted by Berlo, the person whom the plaintiff alleged had retaliatory animus.  In this case, the investigation relied upon by Dr. Mikota was conducted by a neutral third-party, the South Carolina Technical College System.  This Court has held that the cat's paw theory does not apply when there is such an independent investigation, those cases apply here.

For example, in Clemons v. Martin Marietta Materials, Inc., C.A. No. 2:23-cv-0283-BHH-MHC, 2025 WL 725221 (D.S.C. Jan. 15, 2025), *Report and Recommendation adopted*, 2025 WL 586026 (D.S.C. Feb. 24, 2025), the plaintiff's supervisor learned that the plaintiff had likely violated the employer violated the employer's Lockout/Tagout ("LOTO") policy, which prevents someone else from accidentally re-activating power while employees are working on equipment. Id. at *4. Accordingly, the supervisor contacted the Human Relations Department, which assigned an HR Manager to conduct an independent investigation concerning whether the plaintiff had violated the LOTO policy.  Id.  Based upon his independent investigation, the HR Manager concluded that Plaintiff had violated the LOTO policy. Id. at *5. Relying upon the HR Manager's investigation, the employer's Area Production Manager decided to terminate the plaintiff's employment. Id. at *5.

The plaintiff filed suit alleging claims for discrimination and retaliation under Title VII. Id. This Court noted that for the plaintiff to demonstrate pretext, he must show that the defendant's "assessment of his conduct was dishonest or not the real reason for his termination, rather than merely dispute the merits of the termination decision." Id. at *10. This Court stated: "the job of the court is not to appraise the employer's appraisal; rather, its 'sole concern is whether the reason for which the defendant discharged the plaintiff was discriminatory.'" Id. (citing Hawkins v. PepsiCo, Inc., 203 F.3d 274, 280 (4th Cir. 2000)).

This Court found that the plaintiff had not presented sufficient evidence to show that race was the real reason for his termination. Id. at *11. Instead, the undisputed evidence showed that the manager made the decision to terminate the plaintiff's employment based upon the HR Manager's investigation and conclusion that the plaintiff had violated the LOTO policy. Id. This Count noted that even if it inferred that the plaintiff's supervisor was motivated by discriminatory and retaliatory animus, "that fact does not transform [the plaintiff's supervisor] into the actual decisionmaker or the one principally responsible for [the Area Production Manager's] decision" to terminate the plaintiff's employment. Id. Rather, the HR Manager's independent investigation broke any causal link between the supervisor's alleged animus and the Area Production Manager's termination decision. Id. In rejecting the plaintiff's "cat's paw" theory, this Court cited Graham v. Sears, Roebuck & Co., C.A. No. 4:07-cv00632-RBH, 2010 WL 1052219, at *2 (D.S.C. Mar. 19, 2010) (granting summary judgment where evidence showed that allegedly biased supervisor reported that plaintiff violated workplace policy but was not involved in the decision to terminate plaintiff, which was instead made by two other employees following an independent investigation); and Roberts v. Principi, 283 F. App'x 325, 333 (6th Cir. 2008) ("[W]hen a decisionmaker makes a decision based on an independent investigation, any causal link between

the subordinate's retaliatory animosity and the adverse action is severed." (collecting cases)). Id. Consequently, this Court concluded that there was no genuine dispute of material fact whether the defendant's stated reason for termination was a pretext for race discrimination. Id. at *12.

This Court ruled similarly in Elenowitz v. FedEx Ground Package System, Inc., C.A. No. 0:21-cv-2109-SAL-PJG, 2022 WL 19402461 (D.S.C. Sept. 23, 2022), *Report and Recommendation adopted*, 2023 WL 2473121 (D.S.C. Mar. 13, 2023). In Elenowitz, the plaintiff received a "Documented Discussion" from his manager for failing to follow proper "yard check" procedures – a process of ensuring that each truck in the yard had been unloaded. Id. at *1. Approximately one year later, the plaintiff's doctor recommended that the plaintiff take leave from work relating to plaintiff's bipolar disorder, depression, and ADHD. Id. at *2. The plaintiff's supervisor reported that the plaintiff had failed to properly complete a yard check for a second time. Id. The manager "confirmed that the truck was on the yard at the time when [the plaintiff] stated that he had completed the yard check." Id. Consequently, the plaintiff received a discipline. Id. The manager decided that the plaintiff should be terminated for performance issues and initiated the termination proceedings. Id. The plaintiff asserted claims against FedEx for failure to accommodate and retaliatory termination in violation of the ADA and interference under the FMLA. Id. at *3.

This Court found that it was undisputed that the plaintiff's manager was not aware of the plaintiff's diagnosis or that the plaintiff had requested an accommodation. Id. at *6. This Court noted that for the plaintiff to prevail on an ADA retaliation claim, he needed to show that the decisionmaker was aware of his disability. Id. The plaintiff argued that he could show causation under a "cat's paw" theory of liability. Id.

This Court rejected the plaintiff's "cat's paw" theory.  Id.  This Court found that there was no evidence that the supervisor sufficiently influenced the manager's decision so as to be considered decisionmakers.  Id.  This Court found that the evidence showed that the plaintiff was terminated because he failed to properly complete a yard check on two occasions and that the manager had confirmed that that the plaintiff had missed a truck.  Id.  Therefore, this Court determined that the manager's investigation broke the causal link between the supervisor's purported animus and the manager's decision.  Id.  This Court ruled that "where the actual decisionmaker independently investigated and verified the plaintiff's misconduct, the fact that the plaintiff was reported by a supervisor motivated by discriminatory and retaliatory animus does not transform the supervisor into the actual decisionmaker."  Id.  (citing Hill, 354 F.3d at 296).

The evidence in this case shows that after receiving the May 1, 2023, investigative report from the South Carolina Technical College System and the recommendation from Dr. Satterfield, his immediate subordinate, Dr. Mikota concluded that Plaintiff's employment should be terminated.  It is undisputed that neither Dr. Satterfield nor Dr. Mikota were aware that Plaintiff had applied for leave under the FMLA. (Mikota Dep. 19:11-16; Satterfield Aff. ¶ 4).  There is certainly no evidence that Patrice Witt acted other than independently.  There is no evidence creating a genuine issue of material fact that the legitimate non-discriminatory reason for Plaintiff's termination is pretextual and that there is any genuine fact to be considered by a jury.  Accordingly, this Court should grant the motion for summary judgment of Spartanburg Community College.

## CONCLUSION

Based upon the foregoing authorities and arguments, Defendant Spartanburg Community College respectfully submits that this Court should grant summary judgment in Defendant's favor as a matter of law.

          Respectfully submitted,

          s/Stephanie H. Burton
          Stephanie H. Burton (#5009)
          GIBBES BURTON, LLC
          308 East Saint John Street
          Spartanburg, SC 29302
          sburton@gibbesburton.com
          Telephone:  (864) 327-5000
          Facsimile:  (864) 342-6884

          *Attorneys for Defendant Spartanburg Community College*

May 1, 2025